IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| BVS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CDW DIRECT, LLC; <br> ARROW ELECTRONICS, INC.; <br> and TSSLINK, INC., <br><br> Defendants. | Case No. 1:11-cv-79-LRR <br><br> BVS, INC.'S COMPLAINT <br> AND JURY DEMAND |

Plaintiff, BVS, Inc. ("BVS"), for its complaint against the Defendants, CDW Direct, LLC; Arrow Electronics; and TSS Link, Inc., alleges as follows:

## PARTIES

1. BVS is a privately-held corporation headquartered in Cedar Rapids, Iowa. It was organized under the laws of the State of Iowa in 1993. BVS provides on-line training to banks and credit unions.

2. CDW Direct, LLC ("CDW") is an Illinois limited liability company headquartered in Vernon Hills, Illinois. CDW distributes technology products and services nationally, including in the State of Iowa.

3. Arrow Electronics, Inc. ("Arrow") is a New York corporation headquartered in Melville, New York. Arrow is a global provider of products, services and solutions to

industrial and commercial users of electronic components and enterprise computing solutions. Arrow provides services in the State of Iowa.

4. TSSLink, Inc. ("TSS") is a California corporation headquartered in Sunnyvale, California. TSS provides installation services, including providing installation services in the State of Iowa.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Defendants, as they actively conduct business in Iowa and provided the products and/or services to BVS in Iowa that are the subject of this Complaint.

6. Jurisdiction is proper under 28 U.S.C. § 1332 in that there is complete diversity with respect to these claims and the amount in controversy exceeds $75,000.00.

7. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because BVS' state claims derive from a common nucleus operative fact and considerations of judicial economy, convenience and fairness to the litigants dictate that all of the claims be tried in one judicial proceeding.

8. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the complaint occurred in this District and BVS is headquartered in this District.

## FACTUAL BACKGROUND

9. BVS' on-line bank and credit union training services, including meticulous recordkeeping that tracks each and every on-line training session and training session attendees, require a robust, functioning storage area network ("SAN"). BVS' electronic data

system is located in Cedar Rapids, Iowa and its data is backed up to like systems located in Omaha, Nebraska. Without a reliably-functioning SAN (a SAN that does not go off-line) BVS cannot operate its business.

10. In the latter part of 2010, Amer Harb ("Harb"), a CDW representative serving as BVS' account manager, communicated with BVS regarding BVS' expressed need to refresh its SAN. BVS needed to upgrade its SAN because the manufacturer of that SAN had announced end-of-life for that generation and would no longer provide support beyond 2011.

11. In discussions with Harb, BVS made clear that it needed to replace its SAN and provided detailed information to Harb regarding the functionalities of its current system, its future needs and what was essential for its SAN requirements.

12. Harb ultimately convinced BVS to purchase a fully-integrated, turn-key "solution," consisting of a bundled, single-price package of products, services and support. CDW would provide, among other products and services, the necessary hardware and software, installation, programming set-up, training and three years of ongoing support (this bundle of goods and services is referred to as the "SAN Solution").

13. CDW's SAN Solution offer was reflected in a quote generated by CDW and communicated to BVS. Exhibit A.

14. BVS, convinced by CDW that the SAN Solution it was offering would serve the specific needs BVS had shared with CDW, sent CDW a purchase order for the SAN solution. Exhibit B.

- 3 -

Case 1:11-cv-00079-LRR   Document 2   Filed 07/19/11   Page 3 of 7

15. CDW responded by issuing an invoice in the amount of $225,733.91 for the SAN Solution. Exhibit C. CDW affirmatively represented that the SAN Solution would meet BVS' specific business needs.

16. Among other representations, CDW represented that it would ensure that the SAN Solution was functional and could accommodate a full configuration, deliver a SAN Solution that would not compromise/strain the primary database, validate proper functionality, and that it would ensure that a knowledge transfer would occur such that BVS could operate the SAN Solution successfully. Additionally, CDW represented that it would deliver its SAN Solution in a timely manner.

17. On December 22, 2010, Samantha Aljets, a CDW representative, sent communication to BVS introducing herself as the project manager of the SAN Solution installation.

18. On January 12, 2011, BVS issued a check to CDW for the full amount noted on the invoice, $225,733.91. CDW cashed the check.

19. CDW then retained Arrow's services to perform the SAN Solution install, with Alan Gouveia serving as the installation project manager.

20. After an initial kick-off phone call which was delayed, without explanation, until February 7, 2011, nearly seven weeks after CDW's project manager first contacted BVS and nearly four weeks after BVS issued its full payment, CDW introduced an additional service provider to the project, TSS, and indicated that TSS would not begin the onsite work of installation and implementation until March 2011.

21. TSS dispatched its representative, Matt Romo, to BVS' facility on March 1, 2011, in what would be the only on-site appearance by CDW or any of its retained service providers. When Matt Romo left, the SAN Solution was not installed and was not functional.

22. TSS, never returning on-site to complete the project, instead chose to schedule several web conferences which did not help complete the project. The SAN Solution was never functional.

23. On April 7, 2011, TSS communicated that disaster recovery, known by CDW to be critical to BVS, could not be accommodated as originally represented to BVS.

24. By April 14, 2011, the promised delivery of a functional, tested SAN Solution that met BVS' needs and CDW's representations still had not occurred. During the sales process, BVS consistently represented that its primary database server environment must remain sterile and could not be compromised with new processing requirements that had the potential to strain or create additional stresses on the system. CDW assured BVS that the SAN Solution would meet this requirement and impose no additional risk over the existing SAN environment. This representation, however, turned out to be false. BVS then communicated to CDW that it had not received what CDW promised to deliver.

25. On April 14, 2011, CDW acknowledged receipt of BVS' notice that CDW had not delivered what had been promised. Seven days later, on April 21, 2011, CDW had yet to resolve the breach. CDW's installation agent, by the end of April 2011, still had not responded to BVS' issues and BVS learned that he had been reassigned to work on other projects.

26. In the end, CDW did not deliver the SAN Solution it promised to deliver. BVS has received only hardware and software that has no value as it does not deliver the functionality and performance BVS needs, nor is BVS able to mitigate its damages by selling the hardware and software as BVS is not a merchant for these products and the software is subject to a non-transferable license. To-date, CDW has rejected BVS' attempts to return the hardware and software in exchange for a refund.

## COUNT I: BREACH OF CONTRACT

27. BVS realleges the allegations of Paragraphs 1 through 26 above and incorporates those allegations into this Count by this reference.

28. The acts and omissions of CDW constitute a breach of its contract with BVS.

29. CDW's breach of contract caused damages to BVS in the manner previously described and in an amount in excess of the jurisdictional threshold of this Court.

WHEREFORE, BVS respectfully requests that this Court award BVS all compensatory and consequential damages, including the return of the purchase price, interest, costs, and any other further relief this Court deems equitable, just and proper.

## COUNT II: UNJUST ENRICHMENT

30. BVS realleges the allegations of Paragraphs 1 through 29 above and incorporates those allegations into this Count by this reference.

31. BVS paid CDW, Arrow and TSS, via a single payment made to CDW, for a SAN Solution, including a post-installation support plan. BVS paid for the SAN Solution, but Defendants did not deliver the SAN Solution.

32. Defendants will be unjustly enriched unless they are ordered to return the full payment to BVS and otherwise compensate BVS for its losses.

WHEREFORE, BVS, Inc. respectfully requests that this Court award BVS all compensatory and consequential damages, including the return of the purchase price, interest, costs, and any other further relief this Court deems equitable.

## JURY DEMAND

BVS respectfully requests a jury trial.

/s/ Paul D. Gamez
Stephen J. Holtman, AT0003594
Paul D. Gamez, AT0002806
Brian J. Fagan, AT0002376
Simmons Perrine Moyer Bergman PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Tel: 319-366-7641; Fax: 319-366-1917
sholtman@simmonsperrine.com
pgamez@simmonsperrine.com
bfagan@simmonsperrine.com

Attorneys for Plaintiff