**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

BVS, INC.,

        Plaintiff,

vs.

CDW DIRECT, LLC,

        Defendant and Third-Party
        Plaintiff,

vs.

ARROW ELECTRONICS, INC.,
TSSLINK, INC. and NETAPP, INC.,

        Third-Party Defendants.

_____

NETAPP, INC.,

        Counter Claimant,

vs.

CDW DIRECT, LLC,

        Counter Defendant.

No. 11-CV-79-LRR

**ORDER**

_____

**TABLE OF CONTENTS**

*I.*     *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

*II.*    *PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

*III.*   *SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . **5**

*IV.*   *SUMMARY JUDGMENT STANDARD.* . . . . . . . . . . . . . . . . . . . . . **6**

*V.*    *RELEVANT FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . **7**

    *A.*    *Parties.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
    *B.*    *SAN Project Design.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

     *C.*      *Installation and Implementation.* . . . . . . . . . . . . . . . . . . . . . **8**

*VI.*    **CHOICE OF LAW.** . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

*VII.*   **NETAPP MOTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

     *A.*      *Common Liability and Contribution Claim.* . . . . . . . . . . . . **10**

         *1.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . **10**

         *2.*    *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

         *3.*    *Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

             *a.*   *Express warranty.* . . . . . . . . . . . . . . . . . . **12**

             *b.*   *Implied warranties.* . . . . . . . . . . . . . . . . . . **15**

             *c.*   *Breach of contract.* . . . . . . . . . . . . . . . . . **17**

             *d.*   *Unjust enrichment.* . . . . . . . . . . . . . . . . . . **18**

             *e.*   *Fraud.* . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

     *B.*      *Contractual Indemnity Claim.* . . . . . . . . . . . . . . . . . . . . **21**

         *1.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . **21**

         *2.*    *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

         *3.*    *Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

     *C.*      *Summary of Disposition of NetApp Motion.* . . . . . . . . . . . . **24**

*VIII.*  **ARROW MOTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

     *A.*      *Common Liability and Contribution Claim.* . . . . . . . . . . . . **24**

         *1.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . **24**

         *2.*    *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

         *3.*    *Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

             *a.*   *Third-party beneficiary breach of contract.* . . . . . **25**

             *b.*   *Express warranty.* . . . . . . . . . . . . . . . . . . **28**

             *c.*   *Implied warranty of fitness for a particular purpose.* . . . . . . . . . . . . . . . . . . . . . . . . . . **29**

             *d.*   *Breach of contract.* . . . . . . . . . . . . . . . . . **30**

             *e.*   *Unjust enrichment.* . . . . . . . . . . . . . . . . . . **30**

     *B.*      *Contractual Indemnity Claim.* . . . . . . . . . . . . . . . . . . . . **31**

     *C.*      *Breach of Contract Claim.* . . . . . . . . . . . . . . . . . . . . . . **32**

     *D.*      *Summary of Disposition of the Arrow Motion.* . . . . . . . . . . **33**

*IX.*    **TSSLINK MOTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . **33**

     *A.*      *Common Liability and Contribution Claim.* . . . . . . . . . . . . **33**

         *1.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . **33**

         *2.*    *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . **33**

3.     Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34
       a.     Express warranty. . . . . . . . . . . . . . . . . . . . . .   34
       b.     Implied warranty of fitness for a particular
              purpose. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36
       c.     Breach of contract. . . . . . . . . . . . . . . . . . . . . .   37
       d.     Unjust enrichment. . . . . . . . . . . . . . . . . . . . . .   38
B.     Third-Party Beneficiary Breach of Contract. . . . . . . . . . . . . . . . . .   38
C.     Forum Selection Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . .   40
D.     Summary of Disposition of the TSSLink Motion. . . . . . . . . . . . . .   43

X.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   43

## I. INTRODUCTION

The matters before the court are Arrow Electronics, Inc.'s ("Arrow") Motion for Summary Judgment ("Arrow Motion") (docket no. 139), TSSLink, Inc.'s ("TSSLink") Motion for Summary Judgment ("TSSLink Motion") (docket no. 140) and NetApp, Inc.'s ("NetApp") Motion for Summary Judgment ("NetApp Motion") (docket no. 141).

## II. PROCEDURAL HISTORY

On July 19, 2011, BVS, Inc. ("BVS") filed a Complaint (docket no. 2) against CDW Direct, LLC ("CDW"), Arrow and TSSLink, alleging breach of contract and unjust enrichment. On February 13, 2012, BVS moved the court to dismiss the claims against Arrow and TSSLink. *See* Motion to Dismiss (docket no. 27) at 2. On March 2, 2012, the court dismissed Arrow and TSSLink from the instant action without prejudice. *See* March 2, 2012 Order (docket no. 31) at 1.

On April 16, 2012, BVS filed an Amended Complaint (docket no. 38) against CDW. In the Amended Complaint, BVS alleges breach of contract (Count I), unjust enrichment (Count II), breach of express warranty (Count III), breach of implied warranty of merchantability (Count IV), breach of implied warranty of fitness for a particular

purpose (Count V), fraud (Count VI) and fraudulent nondisclosure (Count VII)[1] against CDW.

On April 17, 2012, CDW filed a Third-Party Complaint (docket no. 41) against NetApp, Arrow and TSSLink. In the Third-Party Complaint, CDW alleges that NetApp, Arrow and TSSLink are liable to CDW for contribution and indemnity if CDW is found liable to BVS (Count I), NetApp is liable for contractual indemnity if CDW is found liable to BVS (Count II), Arrow is liable for contractual indemnity if CDW is found liable to BVS (Count III), Arrow breached its contract with CDW (Count IV) and TSSLink breached its contract with Arrow, which CDW can enforce as a third-party beneficiary of the contract (Count V).

On May 9, 2012, CDW filed an Answer (docket no. 45) to the Amended Complaint, denying BVS's claims and asserting affirmative defenses. On June 25, 2012, Arrow filed an Answer (docket no. 50) to the Third-Party Complaint, denying CDW's claims. On that same date, NetApp filed an Answer (docket no. 49) to the Third-Party Complaint, denying CDW's claims, asserting affirmative defenses and asserting a counterclaim against CDW for attorneys' fees and expenses. Also on that same date, TSSLink filed an Answer (docket no. 48) to the Third-Party Complaint, denying CDW's claims and asserting affirmative defenses.

On December 13, 2012, Arrow moved for summary judgment (docket no. 66). On December 14, 2012, NetApp and TSSLink moved for summary judgment (docket nos. 67-68). On March 28, 2013, the court granted CDW's motion for summary judgment against BVS and denied as moot Arrow's, NetApp's and TSSLink's motions for summary judgment against CDW. March 28, 2013 Order (docket no. 109). On July 17, 2014, the

---

[1] The Amended Complaint erroneously marks the fraudulent nondisclosure claim as a second Count VI. Thus, the court will refer to the fraudulent nondisclosure claim as Count VII.

Eighth Circuit Court of Appeals reversed and remanded. *See BVS, Inc. v. CDW Direct, LLC*, 759 F.3d 869, 873 (8th Cir. 2014).

On September 5, 2014, Arrow filed the Arrow Motion, TSSLink filed the TSSLink Motion and NetApp filed the NetApp Motion. On September 26, 2014, CDW filed a Resistance to the Arrow Motion (docket no. 139), a Resistance to the NetApp Motion (docket no. 140) and a Resistance to the TSSLink Motion (docket no. 141). On October 3, 2014, NetApp filed a Reply ("NetApp's Reply") (docket no. 150). On that same date, TSSLink filed a Reply ("TSSLink's Reply") (docket no. 152). On October 7, 2014, Arrow filed a Reply ("Arrow's Reply") (docket no. 154). On February 12, 2015, the court held a hearing on the Arrow Motion, the TSSLink Motion and the NetApp Motion, at which the court heard additional argument. *See* February 12, 2015 Minute Entry (docket no. 177). The matters are fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has diversity jurisdiction over this case because complete diversity exists between BVS and CDW and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."). To the extent that complete diversity does not exist between CDW and all third-party defendants, the court has supplemental jurisdiction over the Third-Party Complaint. *See* 28 U.S.C. § 1367 ("Except as [otherwise] provided . . . , in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)), *cert. denied*, 132 S. Ct. 1144 (2012). "[S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010).

"To survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second alteration in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted). The court must view the record in the light most favorable to the non-moving party and afford it all reasonable inferences. *See Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011). The non-moving party "has the obligation to come forward with specific facts showing that there is a genuine issue for trial." *B.M.* ex rel. *Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 886 (8th Cir. 2013) (quoting *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013)) (internal quotation marks omitted). "A complete failure by the non-moving party 'to make a showing sufficient to establish the existence of an element essential to that party's case . . . necessarily renders all other facts immaterial.'" *Id.* (alteration in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## V.  RELEVANT FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to CDW and affording it all reasonable inferences, the uncontested material facts are as follows.

### A.  Parties

BVS is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. BVS provides online training to banks and credit unions. BVS provides its training services over the internet through the BVS computer system. BVS's main computer system is located in Cedar Rapids, Iowa. BVS also has a disaster recovery system in Omaha, Nebraska. Roy Karon owns BVS. During the relevant period, Gary Praegitzer was the BVS information technology ("IT") manager and Sean Reinhard worked in the BVS IT department.

CDW is an Illinois limited liability company with its principal place of business in Vernon Hills, Illinois. CDW is a reseller of technology products and services. CDW sells products and services nationally through an internet-based retail business. CDW does not manufacture technology products. At times material to the instant action, Amer Harb was an account manager for CDW and was assigned to the BVS account. Samantha Aljets was a project coordinator for CDW.

NetApp is a Delaware corporation with its principal place of business in Sunnyvale, California. NetApp manufactures and sells technology products and services nationally. At times material to the instant action, Ben Knorr was a sales engineer with NetApp and Michelle Schmidt was a customer service representative.

Arrow is a New York corporation with its principal place of business in Melville, New York. Arrow sells components, services and solutions to resellers. Arrow is authorized to sell and provide services related to NetApp technology products. During the relevant period, Cynthia Clark was a project manager with Arrow.

TSSLink is a California corporation with its headquarters in Sunnyvale, California. TSSLink provides software implementation services and hardware services. TSSLink is authorized to provide services related to NetApp technology products. At times material to the instant action, Matt Romo was a professional services engineer responsible for performing software-based implementations of NetApp software as well as hardware-based installations of NetApp hardware.

### B. SAN Project Design

In late 2010, BVS was looking to update several components of its computer system, including its storage area network ("SAN"). BVS was unhappy with its existing SAN from manufacturer ECM due to the poor customer service that BVS thought ECM provided. BVS began looking for a new SAN solution that would store electronic data from BVS's Cedar Rapids location and regularly copy the data to BVS's disaster recovery site in Omaha.

During the relevant period, Amer Harb was the CDW account manager responsible for the BVS account. BVS contacted CDW in the fall of 2010 to discuss options for a SAN solution. After discussing options with Gary Praegitzer, Amer Harb set up a conference call with Ben Knorr and Michelle Schmidt of NetApp to begin developing the SAN solution. Ben Knorr and Michelle Schmidt also traveled to Cedar Rapids to meet with BVS employees. Ben Knorr was responsible for managing the NetApp hardware and software for the SAN solution, although he was not responsible for managing the installation and implementation services. Arrow was responsible for providing installation and implementation services. CDW did not rely on its own solution architects but instead relied on NetApp and Arrow to architect and implement BVS's SAN solution.

### C. Installation and Implementation

BVS received the NetApp goods listed on the invoice. Arrow hired TSSLink to perform the Arrow provisioned services listed on the invoice, which included installation

and implementation of the SAN system. On February 7, 2011, a kickoff phone call was held to discuss the work involved on the project, introduce the engineer and discuss scheduling of the services. Samantha Aljets and Amer Harb from CDW, Gary Praegitzer from BVS, Matt Romo from TSSLink and Cynthia Clark from Arrow participated in the kickoff phone call.

Arrow first proposed installing and implementing the system from January 27, 2011 to January 28, 2011. BVS declined to have the installation done during the proposed dates, and the installation was rescheduled for March 1, 2011 to March 3, 2011. Arrow also requested that Gary Praegitzer fill out a configuration worksheet, which various Arrow and CDW employees sent to Gary Praegitzer at various times between January 27, 2011, and February 23, 2011. Gary Praegitzer completed the worksheet on February 25, 2011, although he testified that he provided much of the information verbally and was waiting for access to a database to acquire the remaining information.

Matt Romo provided the Arrow provisioned services from March 1, 2011 through March 3, 2011. On March 3, 2011, Matt Romo filled out a project completion form, which Gary Praegitzer signed. The project completion form states that four services were complete and a fifth service, the Snap Manager SQL migration service, was not complete. Matt Romo also performed the sixth Arrow provisioned service that was erroneously left off of his project order documentation. Between March 3, 2011 and May 2011, Matt Romo made several attempts to complete the installation and implementation of the SAN system, including several conference calls and web-based troubleshooting sessions.

On April 14, 2011, Gary Praegitzer sent an email to Samantha Aljets at CDW, expressing his frustration that the SAN system was not fully implemented and functioning properly. In response, Ben Knorr from NetApp offered to send a NetApp engineer to Cedar Rapids to get the system working. BVS declined Ben Knorr's offer and, on May 19, 2011, BVS decided that the system would not be able to function properly and

attempted to send the hardware and software back to CDW. However, CDW refused to take the system back.

## VI. CHOICE OF LAW

As CDW states, "[t]he present case could be complicated by the existence of nine different contracts that choose widely disparate states for the source of governing law." Resistance to the NetApp Motion at 10. However, CDW states that "Iowa law is consistent with the competing forum laws on the issues raised thus far." *Id.* NetApp agrees and states that "no 'true conflict' exists" for choice of law purposes. Brief in Support of the NetApp Motion (docket no. 141-1) at 5 (formatting omitted). Arrow apparently also agrees, as it cites only to Iowa law. *See generally* Brief in Support of the Arrow Motion (docket no. 139-1). Similarly, TSSLink cites only to Iowa law. *See generally* Brief in Support of the TSSLink Motion (docket no. 140-1). Because there does not appear to be a true conflict between Iowa law and the laws of any of the competing states, the court shall apply Iowa law for all of the claims in the third-party defendants' motions for summary judgment. *See Modern Equip. Co. v. Cont'l W. Ins. Co.*, 355 F.3d 1125, 1128 n.7 (8th Cir. 2004) ("If there is not a true conflict between the laws of [different states] on the pertinent issue, then no choice-of-law is required.").

## VII. NETAPP MOTION

In the NetApp Motion, NetApp argues that it is entitled to summary judgment on CDW's common liability and contribution claim and CDW's contractual indemnity claim.

### A. Common Liability and Contribution Claim

### 1. Parties' arguments

NetApp argues that it is entitled to summary judgment on CDW's common liability and contribution claims because CDW has not "identif[ied] specific facts tending to show that NetApp was at fault in any way in architecting the SAN." Brief in Support of the NetApp Motion at 17.

10

In its Resistance to the NetApp Motion, CDW argues that NetApp may be liable to CDW for contribution because "the common law right to contribution exists outside of the Iowa Comparative Fault Act and is not confined to tort claims."[2] Resistance to the NetApp Motion at 12. CDW contends that "[t]here is a fact issue as to whether NetApp breached its warranties, its contracts, or committed fraud . . . [which] provide[s] the basis for common liability as to the quality and functionality of the NetApp SAN." *Id.* at 15 (internal quotation marks omitted).

## 2. *Applicable law*

"'Common liability exists when the injured party has a legally cognizable remedy against both the party seeking contribution and the party from whom contribution is sought.'" *State* ex rel. *Palmer v. Unisys Corp.*, 637 N.W.2d 142, 153 (Iowa 2001) (quoting *McDonald v. Delhi Sav. Bank*, 440 N.W.2d 839, 841 (Iowa 1989)). "Common liability exists for the purpose of contribution when two or more actors are liable to the injured party for the same damage." *Id.* "A party may seek contribution from another if they share a common liability, even if their liability rests on different theories." *Id.* at 152-53. When the burdens placed on the allegedly liable parties are different, the parties are not in equitable positions and are therefore not entitled to contribution on the basis of common liability. *Id.* at 153. As CDW concedes, it must "prove that BVS had a 'legally cognizable remedy' against NetApp" to avoid the grant of summary judgment in favor of NetApp. Resistance to the NetApp Motion at 13. And, apart from showing that BVS has

<hr/>

[2] In the Third-Party Complaint, CDW alleges that NetApp is liable to CDW based on "the Iowa Comparative Fault Act, any other applicable governing state statutes relating to contribution and indemnity, and any applicable common-law actions for contribution and indemnity." Third-Party Complaint at 4-5. However, in its Resistance to the NetApp Motion, CDW only argues that NetApp is liable to CDW based on common law common liability and contribution. Accordingly, the court only addresses Iowa common law as to the contribution and indemnity claim.

some cognizable remedy against NetApp, CDW must also show that the cognizable remedy makes CDW and NetApp "liable to [BVS] for the same damage." *Unisys Corp.*, 637 N.W.2d at 153.

### 3. *Application*

CDW argues that NetApp shares common liability with it based on: (1) express warranty; (2) implied warranties of merchantability and fitness for a particular purpose; (3) breach of contract; (4) unjust enrichment; and (5) fraud. *See* Resistance to the NetApp Motion at 14-17.

#### a. *Express warranty*

CDW argues that NetApp is liable to BVS based on express warranties contained in the Reseller Agreement between NetApp and CDW. The parties agree that BVS is the "End User" referenced in the Reseller agreement. *See* NetApp's Reply at 3 ("The Reseller Agreement provided for . . . warranties from NetApp to BVS."). Therefore, CDW contends, BVS has a legally cognizable remedy against NetApp because NetApp breached its warranties to BVS. In short, CDW argues that NetApp breached NetApp's express warranties to BVS and, therefore, NetApp shares a common liability with CDW.

In the agreement, NetApp warranted the following:

> 1.1    Hardware Products Warranty: NetApp warrants to End User . . . that the Hardware sold by NetApp will operate in accordance with NetApp's published specifications in effect on the date the Hardware is shipped. . . .

> 1.2    Software Products Warranty: NetApp warrants to End User . . . that (a) the Software will materially conform to NetApp's published specifications in effect on the date End User receives the Software; and (b) the media containing the Software (but not the Software itself) is free from physical defects. . . . This warranty . . . does not cover software, other items or any services, provided by any persons other than NetApp. . . .

> 1.3 Service Products Warranty: NetApp warrants that the Services purchased by End User shall be performed by NetApp or its authorized service providers in a workmanlike manner.

Reseller Agreement, NetApp's Appendix ("NetApp's App'x") (docket no. 141-3) at 30.

CDW argues that the Eighth Circuit Court of Appeals "found a fact issue as to the services provided in the NetApp installation." Resistance to the NetApp Motion at 15. NetApp provided services in the NetApp installation. Therefore, CDW contends, "whether NetApp-approved service providers breached NetApp's warranty" is an issue of fact. *Id.* CDW contends that NetApp breached such warranty "because its approved service providers failed to install the SAN 'in a workmanlike manner.'" *Id.* NetApp counters by stating that "[t]he Services contemplated by the Service Products warranty do **not** include installation and configuration services" because "[i]nstallation and configuration services are 'Professional Services,' which are expressly excluded from the definition of Services in the Reseller Agreement." NetApp's Reply at 3-4 & n.3.

To the extent NetApp argues that the "Services" contemplated in the warranty do not include installation and configuration services, NetApp is incorrect. The Reseller Agreement originally defined Services as "any maintenance, technical support package or any other services [NetApp] makes available for purchase by [CDW] . . . other than Professional Services." Reseller Agreement, NetApp's App'x at 16. However, the parties subsequently amended the Reseller Agreement to define Services as "Support Services or Professional Services." Amendment to Reseller Agreement, NetApp's App'x at 48. Because NetApp warranted Professional Services, and installation and configuration services are Professional Services, NetApp warranted its installation and configuration services to BVS as the end user.

Nonetheless, the court finds that NetApp has "inform[ed] the . . . court of the basis for its motion, and . . . identif[ied] those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (fifth and sixth alterations in original) (quoting *Celotex Corp.*, 477 U.S. at 323) (internal quotation marks omitted). Specifically, NetApp points to, among other things, the fact that Roy Karon—the owner of BVS—agreed that he did not "have any complaints about NetApp's performance or conduct during the course of time that the CDW SAN solution was sold and implemented." Deposition of Roy Karon, NetApp's App'x at 193. In addition, NetApp's evidence establishes that CDW's corporate representative does not believe NetApp did anything wrong, BVS's expert does not believe NetApp did anything wrong and CDW's own expert does not believe NetApp did anything wrong. *See* Deposition of Gregg Meyers, NetApp's App'x at 105-07 (CDW's corporate representative stating that he does "not recall reading anything that suggested somebody [at NetApp] did something wrong," that he was not "critical in any way of the solution . . . sold by CDW to BVS," that he was not "in any way critical of [the] SAN Solution sold by CDW to BVS," that "none of the CDW pre-sales solution architect team . . . was critical in any way of the way that [the SAN solution] was architected" and that he had "no facts . . . that NetApp did anything wrong"); Deposition of Christopher O'Brien, NetApp's App'x at 146 (BVS's designated expert stating that he "had no criticism of the way that [the SAN solution] was scoped or architected," that he has not "formed any opinions critical of NetApp's performance with respect to the SAN solution" and that "if [he] testif[ies] at trial, [he] will not expect to testify as to any criticisms of NetApp's performance with respect to the SAN solution"); Deposition of Todd King, NetApp's App'x at 136-37 (CDW's expert stating that he is not "at all critical of NetApp's design of the BVS SAN solution," that he did not "believe that any of BVS's issues were caused by any problems with NetApp's hardware" and that

"[f]rom a CDW perspective, . . . NetApp [did not] do anything wrong in architecting the solution").

To survive summary judgment, CDW "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp.*, 477 U.S. at 324). CDW has submitted no evidentiary materials to show that there is a genuine issue for trial.[3] Instead, CDW relies solely on "if us then them" logic. By itself, such logic is insufficient to prove common liability. *See Unisys Corp.*, 637 N.W.2d at 153. Because CDW could be liable to BVS for reasons unrelated to NetApp's conduct and because CDW fails to point to anything in the record to show that there is a genuine issue of material fact for trial, the court shall grant the NetApp Motion to the extent it seeks summary judgment as to CDW's common liability claim against NetApp for breach of express warranty.

### b. Implied warranties

CDW argues that BVS alleges that the goods it received breached the implied warranties of merchantability and fitness for a particular purpose. CDW contends that "[i]f there is a triable fact dispute on this issue, then NetApp is liable for contribution" because NetApp supplied the goods. Resistance to the NetApp Motion at 16. In short,

---

[3] There appears to be some dispute about whether Protection Manager was architected to be a part of the SAN solution. Ben Knorr of NetApp testified that "[t]he SAN solution sold by CDW to BVS . . . includ[ed] Protection Manager." Supplemental Affidavit of Benjamin J. Knorr, NetApp's Supplemental Appendix (docket no. 150-2) at 4. Matt Romo of TSSLink testified that "Protection Manager is another piece of software that NetApp provides" and that it "is not an item that was purchased" because the SAN solution "was not architected to include Protection Manager." Deposition of Matt Romo, BVS's Amended Appendix ("BVS's App'x") (docket no. 82-1) at 211. Despite this apparent discrepancy, CDW has not alleged that Protection Manager was essential to the SAN solution or that its presence or absence caused the SAN solution failure. That is, CDW does not contend that this discrepancy is material, and the record contains no evidence that this discrepancy is material.

15

CDW argues that BVS has a cognizable claim against NetApp for breaching such implied warranties. NetApp argues that it disclaimed any such warranties.

Iowa Code section 554.2314 provides that "[u]nless excluded or modified (section 554.2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Iowa Code § 554.2314. Iowa Code section 554.2315 provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 554.2316 an implied warranty that the goods shall be fit for such purpose." *Id.* Despite these implied warranties, Iowa Code section 554.2316 provides:

> Subject to subsection 3, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

Iowa Code § 554.2316(2). Subsection 3 continues:

> [U]nless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.

Iowa Code § 554.2316(3)(a).

Here, the Reseller Agreement between NetApp and CDW contained the following language:

> The foregoing warranties and remedies are exclusive and are in lieu of all other warranties, express or implied, either in fact or by operation of law, statutory or otherwise, and NetApp disclaims all other representations and warranties including all warranties of merchantability and fitness for a particular purpose or non infringement.

Reseller Agreement, NetApp's App'x at 30 (formatting omitted). This provision clearly excludes the implied warranties of merchantability and fitness for a particular purpose. CDW fails to show how NetApp could be liable to BVS as required to establish common liability. *See Unisys Corp.*, 637 N.W.2d at 153. Accordingly, the court shall grant the NetApp Motion to the extent it seeks summary judgment as to CDW's common liability claim against NetApp for breach of implied warranties of merchantability and fitness for a particular purpose.

### c.     Breach of contract

CDW states that "BVS alleges that it did not receive all of the goods and services identified in the contract," and that "NetApp supplied the goods . . . and some services." Resistance to the NetApp Motion at 16. Therefore, CDW contends, "[i]f there is a triable fact dispute" on the issue of whether BVS received the goods and services for which it contracted, then "NetApp is liable for contribution." *Id.* In other words, CDW argues that NetApp is liable to BVS for breach of contract. CDW refers to "the contract" in the context of BVS's allegations against CDW in the Amended Complaint. Thus, it appears that the contract CDW is referencing is the contract between BVS and CDW. *See* Amended Complaint ¶¶ 6-23. Moreover, neither BVS nor CDW argue that BVS entered into any contract with NetApp. For NetApp and CDW to share a common liability to BVS under a breach of contract theory, BVS must have contracted with NetApp. *See Unisys Corp.*, 637 N.W.2d at 841 ("'Common liability exists when the injured party has a legally cognizable remedy against both the party seeking contribution and the party from whom contribution is sought.'" (quoting *McDonald*, 440 N.W.2d at 841)). Because neither BVS

nor CDW allege that BVS contracted with NetApp, the court shall grant the NetApp Motion to the extent it seeks summary judgment as to CDW's common liability claim against NetApp for breach of contract.

### d.    Unjust enrichment

CDW states that BVS is suing CDW for unjust enrichment. CDW argues that if it is liable to BVS for unjust enrichment, then it is entitled to contribution from NetApp. This is so, CDW contends, because NetApp supplied goods and services to BVS pursuant to its contract with CDW. In short, CDW argues that the basis for BVS's unjust enrichment claim is attributable to NetApp's conduct.

To show that a defendant has been unjustly enriched, a plaintiff must show: "(1) [the] defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *Unisys Corp.*, 637 N.W.2d at 154-55. "Generally the existence of a contract precludes the application of the doctrine of unjust enrichment." *Johnson v. Dodgen*, 451 N.W.2d 168, 175 (Iowa 1990); *see also Cy & Charley's Firestone, Inc. v. Running*, 810 N.W.2d 25, No. 11-0211, 2011 WL 6668039, at *6 (Iowa Ct. App. Dec. 21, 2011) (unpublished table decision) (affirming the lower court's dismissal of the plaintiff's unjust enrichment claim because a purchase agreement governed the parties' dispute). *But see Maasdam v. Maasdam's Estate*, 24 N.W.2d 316, 320-21 (Iowa 1946) (noting that a party may plead an implied contract claim such as unjust enrichment as an alternative cause of action to an express contract claim).

Although CDW maintains that if CDW is liable to BVS for unjust enrichment, it is entitled to contribution from NetApp, CDW does not point out how NetApp would be unjustly enriched at the expense of BVS. Indeed, it appears that the benefit NetApp received was the money paid to it by CDW pursuant to the contract between CDW and NetApp. Because any alleged enrichment came at the expense of CDW rather than at the

expense of BVS, no genuine issue of material fact exists as to whether NetApp shares common liability with CDW to BVS for unjust enrichment. *See Unisys Corp.*, 637 N.W.2d at 841 ("'Common liability exists when the injured party has a legally cognizable remedy against both the party seeking contribution and the party from whom contribution is sought.'" (quoting *McDonald*, 440 N.W.2d at 841)). In short, CDW fails to show how NetApp is liable to BVS for unjust enrichment. Accordingly, the court shall grant the NetApp Motion to the extent it seeks summary judgment as to CDW's common liability claim against NetApp for unjust enrichment.

### e. Fraud

CDW argues that because "NetApp supplied . . . express warranties and representations[] during negotiations[] on which BVS relied in contracting[,] . . . [then] [i]f there is a triable fact dispute on this issue, NetApp is liable for contribution and indemnity." Resistance to the NetApp Motion at 16-17. In short, CDW claims that NetApp is liable to BVS for fraud based on NetApp's representations during negotiations.

"[T]o recover on a fraud action at law in [Iowa], 'a plaintiff must establish . . . the following elements by a preponderance of clear, satisfying and convincing evidence: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damage.'" *Ltd. Flying Club, Inc. v. Wood*, 632 F.2d 51, 54 (8th Cir. 1980) (quoting *B & B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1976)). "Scienter and intent to deceive are closely related and 'are shown not only when the speaker has actual knowledge of the falsity of his representations but also when he speaks in reckless disregard of whether his representations are true or false.'" *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 155 (Iowa 1984) (quoting *Grefe v. Ross*, 231 N.W.2d 863, 867 (Iowa 1975)); *see also Ltd. Flying Club, Inc.*, 632 F.2d at 55 (stating that a plaintiff can prove scienter "by showing that false representations were made 'in reckless disregard of their truth or falsity'" (quoting *B & B Asphalt Co.*, 242 N.W.2d

at 284)). "An honest belief in the truth of one's statements . . . does not preclude a finding of fraud. When a defendant makes a misrepresentation recklessly, with careless disregard for whether it is true or false, he may be liable for fraud." *Beeck v. Kapalis*, 302 N.W.2d 90, 95 (Iowa 1981).

The Iowa Supreme Court has held:

> A mere statement of an honest opinion, as distinguished from an assertion of fact will not amount to fraud, even though such opinion be incorrect. When the statements become representations of fact, or the expression of opinion is insincere and made to deceive or mislead[,] they may be treated as fraudulent. Whether such is their quality and character is ordinarily a jury question.

*Hoefer v. Wis. Educ. Ass'n Ins. Trust*, 470 N.W.2d 336, 340 (Iowa 1991) (quoting *Int'l Milling Co. v. Gish*, 137 N.W.2d 625, 631 (Iowa 1965)). "A statement of intent to perform a future act is actionable only when spoken with the existing intention not to perform." *City of McGregor v. Janett*, 546 N.W.2d 616, 619 (Iowa 1996). "Mere failure of future performance cannot alone prove deceit; otherwise every breach of contract would give rise to an action for fraud." *Id.*

Here, neither BVS nor CDW alleges that NetApp made any false representations to BVS. CDW attempts to rely on BVS's allegations that CDW made false representations to BVS. *See* Resistance to the NetApp Motion at 17. However, for NetApp to share a common liability with CDW, NetApp must have made fraudulent representations to BVS. *See Unisys Corp.*, 637 N.W.2d at 841 ("'Common liability exists when the injured party has a legally cognizable remedy against both the party seeking contribution and the party from whom contribution is sought.'" (quoting *McDonald*, 440 N.W.2d at 841)). Since CDW neither alleges that NetApp made a false representation to BVS nor shows that there is a genuine issue of material fact about whether NetApp made such a representation, the

court shall grant the NetApp Motion to the extent it seeks summary judgment as to CDW's common liability claim against NetApp for fraud.

## B. Contractual Indemnity Claim

### 1. Parties' arguments

NetApp argues it is entitled to summary judgment on CDW's contractual indemnity claim because "there are no facts supporting NetApp's liability with respect to the SAN solution." NetApp Motion at 19.

CDW argues that summary judgment is inappropriate on its contractual indemnity claim because "NetApp agreed to indemnify CDW and hold CDW harmless . . . [and] if NetApp acted negligently or fraudulently in its provision of services, NetApp must indemnify CDW." Resistance to the NetApp Motion at 17-18. CDW does not point to anything in the record to support its argument that NetApp acted in a way to trigger its indemnity obligation. CDW states that NetApp described the performance of the SAN solution during a discovery meeting at which representatives from NetApp, CDW and BVS discussed the SAN solution. CDW contends that therefore NetApp may be liable to BVS for breach of warranty or fraud based on NetApp's representations during such meeting. *See id.* at 18.

### 2. Applicable law

"An indemnification agreement is created when the words used express an intention by one party to reimburse or hold the other party harmless for any loss, damage, or liability." *McNally & Nimergood v. Neumann-Kiewit Constructors, Inc.*, 648 N.W.2d 564, 570 (Iowa 2002). "A contract for indemnification is generally subject to the same rules of formation, validity and construction as other contracts." *Id.* at 571 (citing *Evans v. Howard R. Green Co.*, 231 N.W.2d 907, 916 (Iowa 1975)). "In examining a contractual indemnification claim, the contract 'ultimately determines the rights of the parties because our legal principles concerning indemnification are often qualified by the

particular terms of the agreement.'" *Cunningham v. Aviva Life & Annuity Co.*, No. 11-0371, 810 N.W.2d 24, 2011 WL 6080405, at *4 (Iowa Ct. App. Dec. 7, 2011) (unpublished table decision) (quoting *Alliant Energy-Interstate Power & Light Co. v. Duckett*, 732 N.W.2d 869, 877 (Iowa 2007)).

### 3. *Application*

Here, the parties agree that the indemnity provision is as follows:

> Each party (the "Indemnitor") shall defend, indemnify and hold the other party, its Affiliates and their officers, directors, employees and agents (collectively the "Indemnitees") harmless, without limitation, from and against any and all claims, demands, actions, lawsuits, proceedings, liabilities, losses, costs and expenses (including reasonable attorney's fees) which the Indemnitees may suffer or incur arising out of the Indemnitor's negligence or willful misconduct in connection with the sale of Products or the performance of the Services.

Amendment to Reseller Agreement, NetApp's App'x at 47. Thus, for NetApp to be required to indemnify CDW, CDW must show that NetApp was either negligent or engaged in willful misconduct toward BVS "in connection with the sale of Products or the performance of the Services." *Id.*

The court finds that NetApp has "inform[ed] the . . . court of the basis for its motion, and . . . identif[ied] those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson* 643 F.3d at 1042 (fifth and sixth alterations in original) (quoting *Celotex Corp.*, 477 U.S. at 323) (internal quotation marks omitted). Specifically, NetApp points to, among other things, the fact that Roy Karon—the owner of BVS—agreed that he did not "have any complaints about NetApp's performance or conduct during the course of time that the CDW SAN solution was sold and implemented." Deposition of Roy Karon, NetApp's App'x at 193. In addition, NetApp's evidence establishes that CDW's corporate representative does not

believe NetApp did anything wrong, BVS's expert does not believe NetApp did anything wrong and CDW's own expert does not believe NetApp did anything wrong. *See* Deposition of Gregg Meyers, NetApp's App'x at 105-07 (CDW's corporate representative stating that he does "not recall reading anything that suggested somebody [at NetApp] did something wrong," that he was not "critical in any way of the solution . . . sold by CDW to BVS," that he was not "in any way critical of [the] SAN Solution sold by CDW to BVS," that "none of the CDW pre-sales solution architect team . . . was critical in any way of the way that [the SAN solution] was architected" and that he had "no facts . . . that NetApp did anything wrong"); Deposition of Christopher O'Brien, NetApp's App'x at 146 (BVS's designated expert stating that he "had no criticism of the way that [the SAN solution] was scoped or architected," that he has not "formed any opinions critical of NetApp's performance with respect to the SAN solution" and that "if [he] testif[ies] at trial, [he] will not expect to testify as to any criticisms of NetApp's performance with respect to the SAN solution"); Deposition of Todd King, NetApp's App'x at 136-37 (CDW's expert stating that he is not "at all critical of NetApp's design of the BVS SAN solution," that he did not "believe that any of BVS's issues were caused by any problems with NetApp's hardware" and that "[f]rom a CDW perspective, . . . NetApp [did not] do anything wrong in architecting the solution").

To survive summary judgment, CDW "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp.*, 477 U.S. at 324). CDW's evidentiary materials fail to show that there is a genuine issue for trial. Instead, CDW relies solely on "if us then them" logic. By itself, such logic is insufficient to prove common liability. *See Unisys Corp.*, 637 N.W.2d at 153. Because CDW could be liable to BVS for reasons unrelated to NetApp's conduct and because CDW fails to point to anything in the record to show that there is a genuine issue of material fact for trial, the

court shall grant the NetApp Motion to the extent it seeks summary judgment as to CDW's contractual indemnity claim.

### C.   Summary of Disposition of NetApp Motion

The court shall grant the NetApp Motion in its entirety.

## VIII.   ARROW MOTION

In the Arrow Motion, Arrow alleges that it is entitled to summary judgment on CDW's common liability and contribution claim, CDW's contractual indemnity claim and CDW's breach of contract claim.

### A.   Common Liability and Contribution Claim

#### 1.     Parties' arguments

Arrow argues that it is entitled to summary judgment on CDW's common liability and contribution claim because "CDW has come forward with no evidence demonstrating that any conduct by Arrow was a cause of the [SAN solution] failure." Arrow's Reply at 5.

CDW argues that "[t]here are multiple bases for Arrow's common liability to BVS including third-party beneficiary breach of contract, express warranty, and implied warranties of merchantability and fitness for a particular purpose." Resistance to the Arrow Motion at 14. CDW also relies on breach of contract and unjust enrichment. *Id.* at 18.

#### 2.     Applicable law

"'Common liability exists when the injured party has a legally cognizable remedy against both the party seeking contribution and the party from whom contribution is sought.'" *Unisys Corp.*, 637 N.W.2d at 153 (quoting *McDonald*, 440 N.W.2d at 841). "Common liability exists for the purpose of contribution when two or more actors are liable to the injured party for the same damage." *Id.* "A party may seek contribution from another if they share a common liability, even if their liability rests on different

theories." *Id.* at 152-53. When the burdens placed on the allegedly liable parties are different, the parties are not in equitable positions and are therefore not entitled to contribution on the basis of common liability. *Id.* at 153. CDW must show that BVS had a legally cognizable remedy against Arrow to avoid the grant of summary judgment in favor of Arrow. Moreover, in addition to showing that BVS has some cognizable remedy against Arrow, CDW must also show that the cognizable remedy makes CDW and Arrow "liable to [BVS] for the same damage." *Id.*

### 3.   *Application*

CDW argues that it shares common liability with Arrow for: (1) third-party beneficiary breach of contract; (2) express warranty; (3) implied warranty of fitness for a particular purpose; (4) breach of contract; and (5) unjust enrichment. *See* Resistance to the Arrow Motion at 14-18.

### a.   *Third-party beneficiary breach of contract*

CDW argues that BVS was an intended third-party beneficiary to the Master Professional Services Agreement between CDW and Arrow. CDW contends that the Master Professional Services Agreement contained warranties to BVS, and that Arrow breached these warranties. Therefore, CDW claims that Arrow shares a common liability with CDW to BVS.

Iowa has "adopted Restatement (Second) of Contracts section 302 relating to third-party beneficiaries." *RPC Liquidation v. Iowa Dep't of Transp.*, 717 N.W.2d 317, 319 (Iowa 2006). That provision states:

> (1)   Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a)     the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b)     the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302. "In applying section 302, . . . the promisee's intent generally controls. In determining such intent, [Iowa courts] look to the language of the contract and to the circumstances surrounding it." *RPC Liquidation*, 717 N.W.2d at 320 (citation omitted). "A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty." Restatement (Second) of Contracts § 304. As for stating the elements of a breach of contract claim,

> [t]o prove a breach of contract claim, a party must show: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Iowa Mortg. Ctr. v. Baccam*, 841 N.W.2d 107, 110-11 (Iowa 2013) (quoting *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)) (formatting omitted).

Here, CDW argues that "Arrow intended to benefit BVS in the contract for sale of goods and services to CDW." Resistance to the Arrow Motion at 14. CDW then summarily concludes that "Arrow's breach of . . . warranties [to BVS] and failure to provide the contracted goods and services constitutes a breach of the contract." *Id.* at 16. CDW does not state the particular way in which Arrow breached the contract other than that "Arrow[] breach[ed] . . . warranties and fail[ed] to provide the contracted goods and

services." *Id.* CDW fails to point the court to anything in the record that supports this statement.

In response, Arrow does not contest that BVS was a third-party beneficiary to the Master Professional Services Agreement. *See* Master Professional Services Agreement, Arrow's App'x at 24-36.[4] Rather, Arrow argues that CDW "has . . . fallen far short of its burden to set forth specific facts showing a genuine issue of material fact" because "CDW has come forward with no evidence demonstrating that any conduct by Arrow was a cause of the [SAN] system failure." Arrow's Reply at 5.

The court finds that Arrow has "inform[ed] the . . . court of the basis for its motion, and . . . identif[ied] those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson*, 643 F.3d at 1042 (fifth and sixth alterations in original) (quoting *Celotex Corp.*, 477 U.S. at 323) (internal quotation marks omitted). Specifically, Arrow points to the fact that Samantha Aljets, the project coordinator for CDW, stated that "what [Arrow] delivered was not at fault," that she "believes that Arrow has done nothing wrong" and that "Arrow delivered what was sold." Samantha Aljets Deposition, Arrow's App'x at 55; E-Mail from John Anton, CDW Partner Servs. Specialist, to Tracy Fato (May 26, 2011, 10:02 a.m.), Arrow's App'x at 56.

To survive summary judgment, CDW "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp.*, 477 U.S. at 324). CDW did not submit evidentiary materials to show that there is a genuine issue for trial. To the

---

[4] The Master Professional Services Agreement contained in Arrow's appendix is between CDW and Alternative Technology, Inc. However, Arrow states that "[f]or purposes of its summary judgment motion, Arrow accepts CDW's allegation in its [Third-Party Complaint] that Arrow was a party to the Agreement." Brief in Support of the Arrow Motion at 2 n.2.

contrary, "CDW admits that the goods and services supplied by Arrow conformed to the terms of the contract between CDW and BVS." CDW's Response to Arrow's Statement of Facts (docket no. 147-1) ¶ 7. For Arrow and CDW to share a common liability to BVS, CDW must show that Arrow breached its third-party beneficiary contract with BVS. *See Unisys Corp.*, 637 N.W.2d at 153. Because CDW fails to point to anything in the record to show that there is a genuine issue of material fact as to whether Arrow breached its contract toward BVS as a third-party beneficiary, the court shall grant the Arrow Motion to the extent it seeks summary judgment as to CDW's common liability claim based on third-party beneficiary breach of contract.

### b. *Express warranty*

CDW points to the Arrow Professional Services Services Brief and argues that Arrow expressly warranted to BVS that Arrow-provisioned services:

> will be of professional quality (performed in a good and workmanlike manner) and will conform to generally accepted industry standards for such Services and to the requirements specified in this [Statement of Work]. Arrow's personnel shall be competent and qualified to perform the tasks to which they are assigned. In the event of any breach of this warranty, Arrow, at its sole expense and without delay, shall re-perform the non-conforming Services to the applicable standard.

Arrow Professional Services Services Brief, CDW's Appendix ("CDW's App'x") (docket nos. 70-2 through 70-8) at 194. CDW contends that "if the [c]ourt identifies fact issues for trial, CDW could only be held liable for service problems if Arrow breached," and that "[i]f BVS demonstrates fact issues that demonstrate a breach of the service briefs, then a jury could find that Arrow shares 'common liability' to BVS, making summary judgment inappropriate." Resistance to the Arrow Motion at 17. In short, CDW argues that BVS may prevail against CDW at trial, and if it does prevail against CDW, one reason it may prevail is because Arrow breached its service briefs.

In response, Arrow does not disagree that it made an express warranty in the Arrow Professional Services Services Brief. Instead, Arrow argues that "CDW has come forward with no evidence demonstrating that any conduct by Arrow was a cause of the [SAN] system failure." Arrow's Reply at 5.

The court agrees with Arrow that CDW does not identify anything in the record to show how Arrow breached its express warranty. Moreover, the court agrees that CDW's "if us then them" logic is insufficient to show that a genuine issue of fact exists for trial because BVS asserts that CDW is independently liable to BVS. For example, BVS asserts that Amer Harb did not have the technical knowledge required to comprehend BVS's SAN solution needs. *See* BVS's Statement of Additional Material Facts (docket no. 81-2) ¶ 33. Importantly, while CDW identifies evidence in the record to show that Arrow warranted its product, it fails to show *how* Arrow breached this warranty. As the third-party plaintiff, CDW must do more than state a valid legal theory against Arrow to survive summary judgment. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). The court finds that CDW has not "respond[ed] by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp.*, 477 U.S. at 324). Accordingly, the court shall grant the Arrow Motion to the extent it seeks summary judgment on CDW's common liability claim based on breach of express warranty.

### c. *Implied warranty of fitness for a particular purpose*

CDW states that "BVS devotes an entire count of the [Amended Complaint] to alleging that the goods breached the Implied Warranty of Fitness for a Particular Purpose." Resistance to the Arrow Motion at 17. CDW continues by stating that "Arrow sold the NetApp SAN." *Id.* Therefore, according to CDW, "[i]f there is a triable fact dispute on

this issue, then Arrow is liable for contribution." *Id.* Here, CDW fails to point to any evidence in the record to show *how* Arrow violated any implied warranties. Instead, CDW relies solely on BVS's claim that CDW breached the implied warranty of fitness for a particular purpose. For Arrow and CDW to share a common liability to BVS, CDW must show that Arrow breached the implied warranty to BVS. *See Unisys Corp.*, 637 N.W.2d at 153. In short, CDW has not "respond[ed] by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp.*, 477 U.S. at 324). Accordingly, the court shall grant the Arrow Motion to the extent it seeks summary judgment on CDW's common liability claim based on breach of implied warranties.

### d.    *Breach of contract*

The court already ruled on CDW's common liability claim based on a third-party beneficiary contract theory. And, CDW points to no contract between Arrow and BVS. For CDW and Arrow to share a common liability to BVS under a breach of contract theory, BVS must have contracted with Arrow. *See Unisys Corp.*, 637 N.W.2d at 841 ("'Common liability exists when the injured party has a legally cognizable remedy against both the party seeking contribution and the party from whom contribution is sought.'" (quoting *McDonald*, 440 N.W.2d at 841)). Because neither BVS nor CDW allege that BVS contracted with Arrow, the court shall grant the Arrow Motion to the extent it seeks summary judgment as to CDW's common liability claim against Arrow for breach of contract.

### e.    *Unjust enrichment*

To show that a defendant has been unjustly enriched, a plaintiff must show: "(1) [the] defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *Unisys Corp.*, 637 N.W.2d at 154-55.

CDW states that "BVS alleges that it can collect unjust enrichment" from CDW. Resistance to the Arrow Motion at 18. CDW continues by stating that "Arrow supplied the goods (hardware and software) and services (Arrow service and its subcontracted TSSLink installation service) that formed the basis for this claim." *Id.* Therefore, according to CDW, "[i]f there is a triable fact dispute on this issue, Arrow is liable for contribution." Resistance to the Arrow Motion at 18. In summary, CDW's theory is that if CDW was unjustly enriched then Arrow was unjustly enriched because Arrow provided goods and services to BVS.

As already discussed, however, CDW may be liable to BVS absent any wrongdoing by Arrow, and CDW fails to establish how Arrow was enriched at the expense of BVS. For Arrow and CDW to share a common liability to BVS, CDW must show that Arrow was unjustly enriched at the expense of BVS. *See Unisys Corp.*, 637 N.W.2d at 153. Merely relying on BVS's allegations against CDW is not sufficient for CDW to survive summary judgment. Accordingly, the court shall grant the Arrow Motion to the extent it seeks summary judgment on CDW's common liability claim based on unjust enrichment.

### B. Contractual Indemnity Claim

CDW states that CDW and Arrow agreed to indemnify one another in the Master Professional Services Agreement. CDW contends that because BVS alleges problems "'arising out of' Arrow's installation services, Arrow must defend and indemnify CDW." Resistance to the Arrow Motion at 12.

Arrow concedes that if CDW suffered loss, damage, cost or expense arising out of the services it provided, Arrow would be required to indemnify CDW. However, Arrow argues that "CDW has no evidence to establish that the SAN Solution failed as a result of services performed by Arrow." Brief in Support of the Arrow Motion at 10.

The indemnification provision within the Master Professional Services Agreement states that:

> [Arrow] shall defend [CDW] from and against any Claims and
> shall indemnify and hold CDW[] . . . harmless, without
> limitation, from and against any loss, damage, cost and
> expense (including reasonable attorneys' fees and court costs),
> which they may suffer or incur arising out of (a) [Arrow's]
> performance of the Services; (b) [Arrow's] breach of Section
> 8 herein; or (c) bodily injury or death of any person or damage
> to property arising from the acts or omissions of [Arrow] or
> [Arrow] [p]ersonnel in connection with the performance of the
> services.

Master Professional Services Agreement, Arrow's App'x at 31.

The court finds that CDW did not respond to the Arrow Motion "by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp.*, 477 U.S. at 324). Because CDW fails to point to anything in the record to show that the SAN solution failed as a result of services provided by Arrow, Arrow is entitled to summary judgment on CDW's contractual indemnity claim. Accordingly, the court shall grant the Arrow Motion to the extent it seeks summary judgment on CDW's contractual indemnity claim.

### C. Breach of Contract Claim

In its Third-Party Complaint, CDW alleges that Arrow is liable to CDW because Arrow breached the Master Professional Services Agreement. *See* Third-Party Complaint ¶¶ 36-42. In the Brief in Support of the Arrow Motion, Arrow argues that "CDW has no evidence of any breach by Arrow." Brief in Support of the Arrow Motion at 10. In its Resistance to the Arrow Motion, CDW does not resist the Arrow Motion as to the breach of contract claim. Because CDW does not resist the Arrow Motion as to the breach of contract claim and because CDW did not respond to the Arrow Motion "by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial,'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp.*, 477 U.S. at 324), the court

shall grant the Arrow Motion to the extent it seeks summary judgment on CDW's breach of contract claim.

### D. Summary of Disposition of the Arrow Motion

The court shall grant the Arrow Motion in its entirety.

## IX. TSSLINK MOTION

In the TSSLink Motion, TSSLink argues that it is entitled to summary judgment on CDW's contribution and indemnity claim and on CDW's breach of contract toward third-party beneficiary claim. TSSLink also argues that the court should dismiss it from this lawsuit because a valid forum selection clause requires litigation to be conducted in the state of New York.

### A. Common Liability and Contribution Claim

#### 1. Parties' arguments

TSSLink argues that it is entitled to summary judgment on CDW's common liability and contribution claim because "CDW has produced no evidence to support its claims for contribution, whether based in tort, contract, or any other legal theory." TSSLink's Reply at 4.

CDW argues that summary judgment is inappropriate. In support of its argument, CDW states that "it has been determined that there are past issues as to whether the services provided to BVS were deficient." Resistance to the TSSLink Motion at 13. CDW states that because TSSLink provided services to BVS, "then there is a fact issue as to whether TSSLink breached the terms of its warranty." *Id.* Therefore, CDW argues that CDW and TSSLink share a common liability to BVS.

#### 2. Applicable law

"'Common liability exists when the injured party has a legally cognizable remedy against both the party seeking contribution and the party from whom contribution is sought.'" *Unisys Corp.*, 637 N.W.2d at 153 (quoting *McDonald*, 440 N.W.2d at 841).

33

"Common liability exists for the purpose of contribution when two or more actors are liable to the injured party for the same damage." *Id.* "A party may seek contribution from another if they share a common liability, even if their liability rests on different theories." *Id.* at 152-53. When the burdens placed on the allegedly liable parties are different, the parties are not in equitable positions and are therefore not entitled to contribution on the basis of common liability. *Id.* at 153. CDW must show that BVS had a "legally cognizable remedy" against TSSLink to avoid the grant of summary judgment in favor of TSSLink. Moreover, in addition to showing that BVS has *some* cognizable remedy against TSSLink, CDW must also show that the cognizable remedy makes CDW and TSSLink "liable to [BVS] for the same damage." *Unisys Corp.*, 637 N.W.2d at 153.

### 3. Application

CDW argues that it shares a common liability with TSSLink through a contract between Arrow and TSSLink that had BVS as an intended third-party beneficiary. Through that contract, CDW argues that TSSLink shares a common liability based on: (1) express warranty; (2) implied warranty of fitness for a particular purpose; (3) breach of contract; and (4) unjust enrichment.

### a. Express warranty

CDW argues that TSSLink made an express warranty to Arrow explicitly and to BVS as a third-party beneficiary that "the Services provided hereunder, as specifically identified in [a] [statement of work], will conform to generally accepted standards for such Services in the industry and to the requirements specifically in the applicable [statement of work] for one (1) year after acceptance." Consulting Agreement, TSSLink's Appendix ("TSSLink's App'x") (docket no. 140-3) at 127. CDW contends that "[s]ince it has been determined that there are past issues as to whether the services provided to BVS were deficient in any way, then there is a fact issue as to whether TSSLink breached the terms of its warranty." Resistance to the TSSLink Motion at 13. In short, CDW claims that

BVS's allegations that the SAN solution was deficient in some way is enough to make TSSLink liable to BVS for breach of express warranty.

In response, TSSLink argues that "CDW failed to produce any evidence on which a fact finder could reasonably base a finding of TSSLink's liability." TSSLink's Reply at 3.

For TSSLink and CDW to share a common liability to BVS, CDW must show that TSSLink breached an express warranty to BVS. *See Unisys Corp.*, 637 N.W.2d at 153. The court agrees with TSSLink that CDW fails to produce evidence sufficient to survive summary judgment. In fact, CDW's theory of the case appears to be that it is not liable to BVS because none of its subcontractors did anything wrong. *See, e.g.*, Deposition of Christopher O'Brien, TSSLink's App'x at 62 (BVS's designated expert stating that he has not "formed any opinions critical of TSSLink's performance with regard to the [SAN] project"); Deposition of Samantha Aljets, TSSLink's App'x at 73 (CDW's project manager stating that her "opinion of [TSSLink's] Matt Romo is very high" and that she believed "he was qualified to do the installation for BVS"); Deposition of Christine Schultze, TSSLink's App'x at 79 (representative of CDW stating that "CDW [does not] claim that the Arrow services were performed in a manner that . . . caused any problems with the project"); Deposition of Gregg Meyers, TSSLink's App'x at 88 (representative of CDW stating that CDW is not "critical of the way that TSSLink installed the SAN Solution," and that CDW "has no evidence that the SAN Solution was installed in a negligent manner . . . implemented in a negligent manner . . . [or] configured in a negligent manner"). While the court finds no issue with the legal theory espoused by CDW, CDW fails to establish *how* TSSLink breached its warranty, instead relying solely on "if us then them" logic. As the third-party plaintiff, CDW must do more than state a valid legal theory against TSSLink to survive summary judgment. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion . . . by citing to

particular parts of materials in the record."); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). As the court already discussed, BVS set forth several claims that could impose liability on CDW independent of any wrongdoing by TSSLink. The court finds that CDW did not "respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp.*, 477 U.S. at 324). Accordingly, the court shall grant the TSSLink Motion to the extent it seeks summary judgment on CDW's common liability claim based on breach of express warranty.

### b. *Implied warranty of fitness for a particular purpose*

CDW states that "BVS devotes an entire count of the [A]mended [C]omplaint to alleging that the goods breached the [i]mplied [w]arranty of [f]itness for a [p]articular [p]urpose." Resistance to the TSSLink Motion at 14. CDW continues by stating that "TSSLink contracted to provide installation services on the NetApp SAN." *Id.* CDW contends that because TSSLink provided installation services on the NetApp SAN, TSSLink is liable to BVS for breaching the implied warranty of fitness for a particular purpose.

Iowa Code section 554.2315 provides that:

> [w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 554.2316 an implied warranty that the goods shall be fit for such purpose.

Iowa Code § 554.2315. The Iowa Code defines "goods" as:

> all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops

> and other identified things attached to realty as described in the
> section on goods to be severed from realty (section 554.2107).

Iowa Code § 554.2105(1).

For TSSLink and CDW to share a common liability to BVS, CDW must show that TSSLink breached its implied warranty to BVS. *See Unisys Corp.*, 637 N.W.2d at 153. Here, TSSLink provided services, not goods. *See, e.g.*, TSSLink's Statement of Undisputed Facts (docket no. 140-2) ¶ 1 ("TSSLink and Arrow . . . are parties to a written Consulting Agreement . . . for the provision of engineering and other *services* to VARs and End Users." (emphasis added)); ¶ 4 ("CDW engaged or hired Arrow to provide installation *services* to BVS for the NetApp SAN Solution." (emphasis added)). Because TSSLink provided only services—rather than goods—, Iowa Code section 554.2315 does not apply. Moreover, CDW does not allege sufficient facts showing that even if TSSLink had somehow implicitly warranted its services, it failed to comply with such warranty. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."). Accordingly, the court shall grant the TSSLink Motion to the extent it seeks summary judgment on CDW's common liability claim based on breach of the implied warranty of fitness for a particular purpose.

### c. Breach of contract

CDW states that "BVS alleges that it did not receive all of the goods and services identified in the contract," and that "TSSLink contracted to provide the installation services in this lawsuit." Resistance to the TSSLink Motion at 14-15. Therefore, CDW contends that TSSLink and CDW share a common liability to BVS because TSSLink breached its contract with BVS.

CDW refers to "the contract" in the context of BVS's allegations against CDW in the Amended Complaint. Thus, it appears that the contract CDW is referencing is the

contract between BVS and CDW. *See* Amended Complaint ¶¶ 6-23. Moreover, neither BVS nor CDW argue that BVS entered into a contract with TSSLink. For TSSLink and CDW to share a common liability to BVS, CDW must show that TSSLink breached some contract that TSSLink had with BVS. *See Unisys Corp.*, 637 N.W.2d at 153. Because neither BVS nor CDW allege that BVS contracted with TSSLink, the court shall grant the TSSLink Motion to the extent it seeks summary judgment as to CDW's common liability claim against TSSLink for breach of contract.

### d.      Unjust enrichment

To show that a defendant has been unjustly enriched, a plaintiff must show that: "(1) [the] defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *Unisys Corp.*, 637 N.W.2d at 154-55.

CDW states that "BVS alleges that it can collect unjust enrichment" from CDW. Resistance to the TSSLink Motion at 15. CDW continues by stating that "TSSLink contracted to provide installation services on the NetApp SAN." *Id.* Therefore, according to CDW, TSSLink has been unjustly enriched at the expense of BVS. For TSSLink and CDW to share a common liability to BVS, CDW must show that TSSLink was unjustly enriched at the expense of BVS. *See Unisys Corp.*, 637 N.W.2d at 153. Once again CDW's "if us then them" logic does not apply. CDW may be liable to BVS absent any wrongdoing by TSSLink, and CDW fails to show how TSSLink was enriched at the expense of BVS. Accordingly, the court shall grant the TSSLink Motion to the extent it seeks summary judgment on CDW's common liability claim based on unjust enrichment.

### B.  Third-Party Beneficiary Breach of Contract

CDW argues that it is a third-party beneficiary to the Consulting Agreement between TSSLink and Arrow. *See* Resistance to the TSSLink Motion at 15. This contract explicitly "warrant[ed] that the Services provided . . . will conform to generally accepted

standards for such Services in the industry." *Id.* (quoting Consulting Agreement, TSSLink's App'x at 122) (internal quotation marks omitted). CDW argues that "[i]f BVS is entitled to bring its case to the jury, then TSSLink might very well have breached its warranties and contract with Arrow, resulting in damages." *Id.* Therefore, CDW contends, "[i]f there is a fact issue as to whether TSSLink breached the service warranty in its contract with Arrow, CDW is entitled to recover as a third-party beneficiary." *Id.*

TSSLink concedes, for the purposes of summary judgment, "that CDW is a [third-party] beneficiary of the contract between TSSLink and Arrow." Brief in Support of the TSSLink Motion at 15. However, TSSLink argues that it is nonetheless entitled to summary judgment because "CDW has no evidence that TSSLink breached its obligations under the contract or that CDW has suffered damages as the result of TSSLink's work on the BVS project." *Id.* at 16.

The court finds that TSSLink has "inform[ed] the . . . court of the basis for its motion, and . . . identif[ied] those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp.*, 477 U.S. at 323) (internal quotation marks omitted) (fifth and sixth alterations in original). Specifically, TSSLink points to the fact that CDW's expert opined that "TSSLink competently performed its job in installing and implementing the solution." Todd King Deposition, TSSLink's App'x at 93. Indeed, in his expert report, CDW's expert represented that "[t]he Arrow/TSSLink services were above and beyond the tasks required to install the NetApp product in the BVS environment." Todd King Opinion, TSSLink's App'x at 95. This opinion is consistent with Christine Schultze's opinion, Gregg Meyers's opinion and Samantha Aljets's opinion. *See* Deposition of Christine Schultze, TSSLink's App'x at 76-83; Deposition of Gregg Meyers, TSSLink's App'x at 84-86; Deposition of Samantha Aljets, TSSLink's App'x at 68-75.

To survive summary judgment, CDW "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp.*, 477 U.S. at 324). CDW did not submit evidentiary materials to show that there is a genuine issue for trial. Because CDW fails to point to anything in the record to show that there is a genuine issue of material fact, the court shall grant the TSSLink Motion to the extent it seeks summary judgment as to CDW's third-party beneficiary breach of contract claim.

### C. Forum Selection Clause

TSSLink argues that "[t]he Consulting Agreement between TSSLink and Arrow contains a forum selection clause that limits where claims arising under the Agreement may be brought" and "[b]ecause the forum selection clause . . . clearly designates New York . . . as the sole jurisdiction in which a claim arising from the Agreement may be brought . . . , TSSLink is entitled to summary judgment as to this cause of action." Brief in Support of the TSSLink Motion at 17, 19.

CDW appears to concede that the forum selection clause is valid and is applicable to CDW. CDW argues that the court "should treat TSSLink's forum selection argument as one moving to transfer venue" and should deny the request because "after such extensive discovery, holding separate trials in separate jurisdictions might result in inequitable, inconsistent results, and because redundant litigation would be wasteful and unreasonable." Brief in Support of the Resistance to the TSSLink Motion (docket no. 140-1) at 16-17.

As an initial matter, the court does not agree with TSSLink that summary judgment is an appropriate vehicle to enforce a forum selection clause. In support of its argument, TSSLink cites *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991). At the district court, plaintiff Carnival Cruise Lines, Inc. "moved for summary judgment on two grounds: first, that the district court lacked personal jurisdiction over Carnival; and

second, that the [forum selection clause] required [the plaintiff] to bring all claims against Carnival in [a different venue]." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 379 (9th Cir. 1988). The district court "addressed only the first issue, ruling that it lacked personal jurisdiction over Carnival." *Id.* On appeal, Carnival argued that "the district court was required under 28 U.S.C. § 1406(a) to dismiss this action, or to transfer this action to" the court set out in the forum selection clause. *Id.* at 387. The Ninth Circuit Court of Appeals reversed the district court, holding that the district court had personal jurisdiction over the plaintiff's claims and that the forum selection clause was unenforceable. *See id.* at 387, 389. The Supreme Court declined to address the personal jurisdiction argument, instead choosing to focus on the validity of the forum selection clause. *See Carnival Cruise Lines*, 499 U.S. at 589 ("Because we find the forum-selection clause to be dispositive of this question, we need not consider petitioner's constitutional argument as to personal jurisdiction."). The Supreme Court went on to hold that the forum selection clause was enforceable and reversed the Ninth Circuit. *Id.* at 597. The Supreme Court never stated that summary judgment was an appropriate way to enforce a forum selection clause, and in fact appeared to address the forum selection clause as a motion to dismiss or transfer pursuant to 28 U.S.C. § 1406(a)—the argument made by Carnival to the Ninth Circuit. Therefore, because TSSLink provides no other authority in support of its position that summary judgment is an appropriate way to enforce a forum selection clause, and the court is aware of none, the court finds this argument to be without merit.

To the extent that the court construes TSSLink's forum selection argument as a motion to transfer venue—as CDW argues the court should do—the court finds that TSSLink has waived the defense of improper venue. The way in which to present a defense of improper venue is contained in Federal Rule of Civil Procedure 12(b), which states that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert [the defense of improper

venue] by motion." Fed. R. Civ. P. 12(b)(3). Such motion "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). "A party waives [the defense of improper venue] by . . . failing to . . . make it by motion under [Rule 12]." Fed. R. Civ. P. 12(h)(1). Moreover, a defendant "doesn't have to engage in discovery to know whether the forum chosen by the plaintiff is a convenient one; and so there is no reason to allow him to lie back, wait until the plaintiff has invested resources in preparing for suit in the plaintiff's chosen forum, wait perhaps to assess his prospects in that forum, and only then demand that the case start over elsewhere." *Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 887 (7th Cir. 2004). "If the defendant . . . by words or actions misleads the plaintiff into thinking [he is content with the venue] or the court into becoming involved in the case so that there would be wasted judicial effort were the case to be dismissed to another forum, or if he stalls in pleading improper venue because he wants to find out which way the wind is blowing, then conventional principles of waiver or equitable estoppel . . . block the challenge to venue." *Id.* at 887-88.

Here, TSSLink filed its initial Answer to the Third-Party Complaint (docket no. 48) on June 25, 2012. TSSLink did not raise the venue issue until it filed its second motion for summary judgment on September 5, 2014. *See* Brief in Support of the TSSLink Motion at 17-19. Because TSSLink did not raise its venue argument in its responsive pleading, it has waived the improper venue argument. *See* Fed. R. Civ. P. 12(h)(1)(A)(i); Fed. R. Civ. P. 12(b). Moreover, this more than two year gap between TSSLink's initial response to the Third-Party Complaint and the TSSLink Motion "misleads the plaintiff into thinking [TSSLink is content with the venue]" and has led "the court into becoming involved in the case so that there would be wasted judicial effort were the case to be dismissed to another forum." *Am. Patriot Ins. Agency, Inc.*, 364 F.3d at 887-88. Despite the court's finding that TSSLink has waived its venue argument, the court shall grant the TSSLink Motion for the reasons detailed above.

### D. Summary of Disposition of the TSSLink Motion

The court shall grant the TSSLink Motion in its entirety.

## X. CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED THAT**:

(1)     Third-Party Defendant NetApp, Inc.'s Motion for Summary Judgment (docket no. 141) is **GRANTED**;

(2)     Third-Party Defendant Arrow Electronics, Inc.'s Motion for Summary Judgment (docket no.139) is **GRANTED**;

(3)     Third-Party Defendant TSSLink, Inc.'s Motion for Summary Judgment (docket no. 140) is **GRANTED**;

(4)     The Clerk of Court is **DIRECTED** to enter judgment in favor of third-party Defendants NetApp, Inc., Arrow Electronics, Inc. and TSSLink, Inc and against CDW as third-party plaintiff.

**DATED** this 14th day of February, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA