# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| BVS, INC., <br><br>    Plaintiff, <br><br>vs. <br><br>CDW DIRECT, LLC, <br><br>    Defendant and Third-Party Plaintiff, <br><br>vs. <br><br>ARROW ELECTRONICS, INC., TSSLINK, INC. and NETAPP, INC., <br><br>    Third-Party Defendants. <br>_____ <br>NETAPP, INC., <br><br>    Counter Claimant, <br><br>vs. <br><br>CDW DIRECT, LLC, <br><br>    Counter Defendant. | No. 11-CV-79-LRR <br><br>**ORDER** |

## TABLE OF CONTENTS

*I.*    *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*   *PROCEDURAL HISTORY..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.*  *FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*   *ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

      *A.*    *Applicable Law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
      *B.*    *Opinions of Eric Engstrom.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*

       *1.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
       *2.*    *Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
              *a.*    *Area of expertise.* . . . . . . . . . . . . . . . . . . . . . . . 8
              *b.*    *Proper topics.* . . . . . . . . . . . . . . . . . . . . . . . . . . 9
              *c.*    *Reliability.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
              *d.*    *Application to facts and role of jury.* . . . . . . . . . 9
              *e.*    *Summary.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   C.    *Opinions of Todd King.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
       *1.*    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
       *2.*    *Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
              *a.*    *Timeliness of disclosure.* . . . . . . . . . . . . . . . . . . 11
              *b.*    *Proper topics.* . . . . . . . . . . . . . . . . . . . . . . . . . . 12
              *c.*    *Reliability.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
              *d.*    *Area of expertise.* . . . . . . . . . . . . . . . . . . . . . . . 13
              *e.*    *Role of the jury.* . . . . . . . . . . . . . . . . . . . . . . . . 13
              *f.*    *Summary.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   D.    *Opinions of Philip Hedtke.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
VI.    ***CONCLUSION.*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## *I. INTRODUCTION*

The matter before the court is BVS, Inc.'s ("BVS") "Motion to Strike CDW Direct, LLC's Expert Witnesses" ("Motion") (docket no. 101).

## *II. PROCEDURAL HISTORY*

On April 16, 2012, BVS filed an Amended Complaint (docket no. 38) against CDW Direct, LLC ("CDW"). In the Amended Complaint, BVS alleges breach of contract (Count I), unjust enrichment (Count II), breach of express warranty (Count III), breach of implied warranty of merchantability (Count IV), breach of implied warranty of fitness for a particular purpose (Count V), fraud (Count VI) and fraudulent nondisclosure (Count VII)[1] against CDW.

---

[1] The Amended Complaint erroneously marks the fraudulent nondisclosure claim as a second Count VI. Thus, the court will refer to the fraudulent nondisclosure claim as
(continued…)

On May 9, 2012, CDW filed an Answer (docket no. 45) to the Amended Complaint, denying BVS's claims and asserting affirmative defenses. On December 14, 2012, CDW filed a Motion for Summary Judgment (docket no. 70). On March 14, 2013, BVS filed the Motion. On March 28, 2013, the court granted CDW's motion for summary judgment against BVS, which rendered the Motion moot. March 28, 2013 Order (docket no. 109). On July 17, 2014, the Eighth Circuit Court of Appeals reversed and remanded. *See BVS, Inc. v. CDW Direct, LLC*, 759 F.3d 869, 873 (8th Cir. 2014). In light of the Eighth Circuit's decision, the Motion is no longer moot.

On September 17, 2014, CDW filed a Resistance (docket no. 145). On September 26, 2014, BVS filed a Reply (docket no. 146). On February 17, 2015, the court held a Final Pretrial Conference at which it heard argument on the Motion. *See* February 17, 2015 Minute Entry (docket no. 181). The Motion is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

BVS is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. CDW is an Illinois limited liability company with its principal place of business in Vernon Hills, Illinois. The court has diversity jurisdiction over this case because complete diversity exists between BVS and CDW and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . .").

### IV. FACTUAL BACKGROUND

In late 2010, BVS was looking to update several components of its computer system, including its storage area network ("SAN"). BVS was unhappy with its existing

---

[1](…continued)
Count VII.

SAN from manufacturer ECM due to the poor customer service that BVS thought ECM provided. BVS began looking for a new SAN solution that would store electronic data from BVS's Cedar Rapids location and regularly copy the data to BVS's disaster recovery site in Omaha.

BVS contacted CDW in the fall of 2010 to discuss options for a SAN solution. After discussing options with BVS's information technology manager, CDW set up a conference call with representatives from NetApp, Inc. ("NetApp") to begin developing the SAN solution. Representatives from NetApp also traveled to Cedar Rapids to meet with BVS employees. CDW did not rely on its own solution architects but instead relied on NetApp and Arrow Electronics, Inc. ("Arrow") to architect and implement BVS's SAN solution.

BVS received the NetApp goods listed on the invoice. Arrow hired TSSLink, Inc. ("TSSLink") to perform the Arrow provisioned services listed on the invoice, which included installation and implementation of the SAN system. Arrow first proposed installing and implementing the system from January 27, 2011 to January 28, 2011. BVS declined to have the installation done during the proposed dates, and the installation was rescheduled for March 1, 2011 to March 3, 2011. Arrow provided the Arrow provisioned services from March 1, 2011 through March 3, 2011. Between March 3, 2011 and May 2011, TSSLink made several attempts to complete the installation and implementation of the SAN system, including several conference calls and web-based troubleshooting sessions.

On April 14, 2011, BVS sent an email to CDW, expressing frustration that the SAN system was not fully implemented and functioning properly. In response, NetApp offered to send a NetApp engineer to Cedar Rapids to get the system working. BVS declined NetApp's offer and, on May 19, 2011, BVS decided that the system would not be able to

function properly and attempted to send the hardware and software back to CDW. However, CDW refused to take the system back.

## V. ANALYSIS

### A. Applicable Law

The admissibility of expert testimony, even when the federal court is sitting in diversity jurisdiction, is governed by Federal Rules of Evidence 104(a) and 702. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 592 (1993); *see also Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) ("[T]he admissibility of expert testimony in diversity cases is governed by federal law . . . .").

Before the court will admit expert testimony, it must determine that the expert witness, pursuant to Rule 104(a), "is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. In addition to "scientific" knowledge, the United States Supreme Court has stated that this "gatekeeping" inquiry extends to "technical" and "other specialized" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting Fed. R. Evid. 702) (internal quotation marks omitted). Essentially, the proponent of expert witness testimony must convince the court, by a preponderance of the evidence, that the proposed expert witness's testimony is both relevant and reliable. *See Daubert*, 509 U.S. at 592 n.10 ("[Rule 104(a)] matters should be established by a preponderance of proof."); *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006) ("[T]rial courts must serve as 'gatekeepers to insure that proffered expert testimony is both relevant and reliable.'") (quoting *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003)).

Under Rule 702, evidence is relevant if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Fresh*

*Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006); *see also Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir. 1991) ("Rule 702 is one of admissibility rather than exclusion.").

Relevant evidence is reliable if "the proponent of the expert testimony . . . show[s] by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his [or her] conclusions is . . . valid." *Marmo*, 457 F.3d at 757-58. An expert witness may be "qualified as an expert by knowledge, skill, experience, training, or education." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (quoting Fed. R. Evid. 702). If the expert's testimony is relevant and the expert is qualified, the expert may "testify in the form of an opinion or otherwise" if "the testimony is based on sufficient facts or data . . . [,] the testimony is the product of reliable principles and methods . . . and . . . the expert has reliably applied the principles and methods to the facts of the case." *Id.* (quoting Fed. R. Evid. 702).

The Supreme Court has identified a number of factors that courts should consider to determine if an expert's theory or technique has used reliable methodology, including: (1) whether it has been tested; (2) whether it has been subjected to peer review or publication; (3) whether it has a known or potential error rate; and (4) whether it is generally accepted in the relevant scientific or technical community. *Daubert*, 509 U.S. at 593-94. The court may also consider whether the opinion was developed in preparation for litigation and whether the expert can rule out alternative explanations. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 687 (8th Cir. 2001). However, these factors are not "definitive," and a "trial judge [has] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 151-52. Moreover, the "evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands." *Unrein*, 394 F.3d at 1011.

6

"There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Id.* Moreover, the court should exclude an expert's opinion only if that "opinion is so fundamentally unsupported that it can offer no assistance to the jury." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1996)). After all, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

As the Eighth Circuit Court of Appeals described:

> As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.

*Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006) (quoting *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 864 (8th Cir. 2004)).

### B. *Opinions of Eric Engstrom*

Eric Engstrom is a Chartered Financial Analyst ("CFA"), a Certified Public Accountant ("CPA") and a CPA Accredited in Business Valuation ("CPA/ABV"). *See* Eric Engstrom Report (docket no. 101-2) at 8. In his report, Engstrom opines that "BVS's damage calculation significantly overstates the economic loss that the [c]ompany . . . would have allegedly been able to earn on those funds." *Id.* at 1. He also opines that "BVS's damage calculation significantly overstates the economic loss that the [c]ompany has allegedly incurred due to its legal claims against CDW." *Id.* at 2.

Specifically, Engstrom's report attacks BVS's damage calculation for two different losses. First, Engstrom addresses BVS's claimed loss of use of the funds paid to CDW for the SAN solution. BVS contends that it could have invested the $226,000 paid to

7

CDW and earned a return of 26.87%. Second, Engstrom addresses BVS's claimed loss for delaying BVS's implementation of a different product—a Customer Education Center.

### 1. Parties' arguments

BVS argues that the court should strike Engstrom's testimony because his opinions: (1) "are outside his expertise"; (2) "are not proper topics for expert testimony"; (3) "are not sufficiently reliable to meet the standards under Federal Rule of Evidence 702"; and (4) are not supported by "any reliable principles and/or methods [as applied] to the facts of this case and his opinions usurp the role of the jury and the [c]ourt." Brief in Support of the Motion (docket no. 101-1) at 4.

CDW argues that Engstrom's opinions are within his area of expertise, are proper topics for expert testimony and are sufficiently reliable. CDW also contends that Engstrom applied reliable principles to the facts and his opinions do not usurp the role of the jury and the court. *See* Resistance at 3-12.

### 2. Application

#### a. Area of expertise

The court finds that Engstrom's training and experience as a CPA/ABV qualifies him to testify about BVS's claimed losses. BVS's claimed damages include a financial accounting of a hypothetical investment that would have achieved a 26.87% annual return on the lost purchase price. Engstrom has financial accounting expertise by virtue of his training and experience as a CPA/ABV. Engstrom contends that BVS's return would be significantly less than 26.87%. In coming to that conclusion, Engstrom assumed that BVS "would theoretically be able to replace the missing funds by obtaining a bank loan." Eric Engstrom Report at 1. To the extent that BVS thinks Engstrom's opinions are inconsistent with BVS's historical rate of returns, it may present its own evidence as well as cross-examine Engstrom about his opinions. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of

proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### b. *Proper topics*

The court finds that Engstrom's opinions are proper topics for expert testimony. BVS states that Engstrom's opinions do not contain scientific, technical or other specialized knowledge and are therefore inadmissible under Federal Rule of Evidence 702. However, BVS's loss calculations relied on financial accounting and business valuation principles. Engstrom is trained in financial accounting and business valuation. Engstrom's testimony concerns damages and, therefore, "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

### c. *Reliability*

The court finds that Engstrom's opinions are sufficiently reliable to be admitted. Engstrom relied on BVS's financial accounting and reviewed BVS's financial statements. Engstrom relied on BVS's purported history of holding a large amount of cash to conclude that BVS would have likely invested the missing funds in short-term, fixed-income investments. BVS is of course free to argue that Engstrom's assumptions are incorrect or that he relied on improper numbers or that a different conclusion must be reached based on such data. However, Engstrom's opinions are not "so fundamentally unsupported that [they] can offer no assistance to the jury." *Acosta v. Acosta*, 725 F.3d 868, 874 (8th Cir. 2013) (quoting *Minn. Supply Co.*, 472 F.3d at 544).

### d. *Application to facts and role of jury*

BVS argues that Engstrom relied only on "his own beliefs based on the written documents provided to him by CDW" in forming his opinions and, therefore, the court should not permit him to "merely . . . parrot and/or highlight evidence that the jury itself can consider." Brief in Support of the Motion at 7. CDW argues that Engstrom reviewed, among other things, "audited financial statements for BVS and [the co-owned finance arm

that monetizes BVS's contracts] . . . ; other financial statements and payroll information; and the BVS 'Damages Analysis.'" Brief in Support of the Resistance at 10.

The court finds that Engstrom "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(d). Engstrom looked at the data on which BVS relied to come up with its damage calculation. Engstrom reached a different conclusion than BVS. Engstrom based his conclusion on the purported profitability of the new Customer Education Center that BVS sought to create. The fact that BVS disagrees with this conclusion does not render Engstrom's opinion "so fundamentally unsupported that it can offer no assistance to the jury." *Acosta*, 725 F.3d at 874 (quoting *Minn. Supply Co.*, 472 F.3d at 544); *see also Synergetics, Inc. v. Hurst*, 477 F.3d 949, 955-56 (8th Cir. 2007) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." (quoting *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001)) (quotation marks omitted)).

BVS also contends that Engstrom's opinions usurp the role of the jury because "[t]he jury is capable of determining, based on the evidence presented, whether BVS'[s] damages were reasonably foreseeable and the amount of damages to which BVS is entitled." Brief in Support of the Motion at 8. The court finds that Engstrom's opinions do not usurp the role of the jury. Engstrom's opinions state that in calculating BVS's damages, he would not include the Customer Education Center because the guidance that inspired its creation "was not issued by the [Federal Financial Institutions Examination Council] until . . . approximately six months after BVS placed its purchase order." Engstrom's Opinion at 3. This testimony would clearly assist the jury in determining BVS's damages.

      *e.    Summary*

The court shall deny the Motion with respect to Eric Engstrom's expert opinions.

10

## C. *Opinions of Todd King*

Todd King is a "systems engineer specializing in SAN implementation, NetApp FAS/V-series, virtualization, Unified Computing Systems and networking with extensive experience in administration, migration deployment, troubleshooting and system administration." Todd King Curriculum Vitae (docket no. 145-1) at 1. King also has several certifications in the information technology field. *See id.*

In his report, King opines that: "[the] NetApp product was fully capable of performing in the BVS environment"; (2) "[t]he Arrow/TSSLink services were above and beyond the tasks required to install the NetApp product in the BVS environment"; (3) "BVS caused multiple delays in the delivery and installation of an operating SAN system"; (4) "BVS rejected the NetApp product primarily because [BVS's information technology manager] formed the unsubstantiated belief that the NetApp preferred method of replication was somehow inferior to the [ECM] method of replication"; and (5) "BVS did not wait a commercially reasonable time when they rejected the NetApp product." Todd King Opinion (docket no. 101-4).

### 1. *Parties' arguments*

BVS argues that: (1) "CDW failed to timely disclose King as an expert witness"; (2) "King's opinions are not proper topics for expert testimony"; (3) "King's opinions are not sufficient[ly] reliable"; (4) "King's opinions are outside the area of his expertise"; and (5) "King's opinions usurp the role of the jury." Brief in Support of the Motion at 9-10. CDW argues that it timely disclosed King as an expert witness and that his testimony is admissible.

### 2. *Application*

#### a. *Timeliness of disclosure*

On September 6, 2012, United States Chief Magistrate Judge Jon S. Scoles extended "[t]he deadline for CDW . . . to disclose expert witnesses . . . to October 19, 2012."

11

September 6, 2012 Order (docket no. 62) at 6 (formatting omitted). Judge Scoles permitted this extension to allow CDW to address the fact that BVS increased its damages claims from $300,000 to $6.9 million. *See generally id.* CDW disclosed King as one of its experts on October 19, 2012.

BVS contends that "King's opinions go well beyond addressing the additional damages" and, therefore, CDW's disclosure of King's testimony was untimely. Brief in Support of the Motion at 11.

The court finds that CDW timely disclosed King as an expert witness. Judge Scoles did not limit the extension to disclose expert witnesses only to the issue of lost profits. BVS provides no other principled basis for the court to exclude such testimony.

### b. *Proper topics*

BVS contends that "[t]he jury does not need an expert's assistance to understand the chronology of events in this case" and that "the same documents and communications [on which King relied] . . . will be before the jury." Brief in Support of the Motion at 12. The court finds that King's opinions are proper topics for expert testimony. King has considerably more expertise than a lay juror regarding the requirements of the BVS SAN solution and whether the NetApp solution worked or would have worked. Because King's testimony as to these issues would assist the jury, they are proper topics for expert testimony. *See Acosta*, 725 F.3d at 874.

### c. *Reliability*

BVS argues that King's opinions are not sufficiently reliable because he "does not point to any treatise or industry code of conduct or anything outside of his subjective opinion on what BVS might have learned from accessing certain materials to support this opinion." Brief in Support of the Motion at 13.

The court finds that King's opinions are sufficiently reliable under Federal Rule of Evidence 702. King has extensive experience in implementing NetApp products and has

examined the relevant discovery materials. *See generally* Todd King Curriculum Vitae; Todd King Opinion. This combination provides him with a reliable factual basis for making his opinions. To the extent that BVS believes King is not an appropriate expert because he is employed by CDW, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### d. Area of expertise

BVS contends that King's opinions are outside his area of expertise because "[t]here is nothing in King's training or experience that would enable him to offer an expert opinion on why BVS may have rejected the NetApp product" and because "King relies entirely on his experience as the foundation for his expert testimony." Brief in Support of the Motion at 14.

The court finds that Todd King's opinions are within his area of expertise. King has experience installing NetApp products. King may use such experience as a foundation for his opinions. To the extent BVS disagrees with King's conclusions, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. King's opinion is not "so fundamentally unsupported that it can offer no assistance to the jury." *Acosta*, 725 F.3d at 868 (quoting *Minn. Supply Co.*, 472 F.3d at 544).

### e. Role of the jury

BVS argues that Todd King's opinions usurp the role of the jury "because his opinions are replete with his assessment as to the credibility of the witnesses." Brief in Support of the Motion at 14. BVS contends that "[t]hese credibility determinations provide the bases for King's opinions." *Id.* at 15.

13

The court finds that King's opinions do not usurp the role of the jury. BVS relies on *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988). In *Scop*, the Second Circuit Court of Appeals held that an expert witness "may not opine as to the credibility of the testimony of other witnesses at [] trial." *Id.* Here, King is not opining as to the credibility of other witnesses. Rather, he bases his opinion on his knowledge and experience in implementing SAN systems in conjunction with the facts of record. If BVS disagrees with the facts on which King relies in forming his opinions, BVS is free to cross-examine King and present contrary evidence in support of its position.

### *f.  Summary*

The court shall deny the Motion with respect to Todd King's opinions.

### D. *Opinions of Philip Hedtke*

Philip Hedtke and Kevin Halder are employees of Network Computer Solutions of Eastern Iowa, Inc. ("NCSEI"). "NCSEI is in the business of selling network computing products and services." Philip Hedtke Opinion (docket no. 101-5) at 1. Hedtke and Halder "possess a great deal of experience in the market for selling computer network products and services" and "have years of experience and very specific training in network computing." *Id.* In the Philip Hedtke opinion, Hedtke mostly answers questions from CDW's counsel related to background information of what SAN systems are and how they work.

BVS argues that Hedtke's opinion is not connected with the facts of this case and, although "[a] general understanding of SAN systems may prove useful to the jury in the case[,] . . . by the time CDW calls Hedtke to testify, the jury already will have heard . . . the necessary background information on SAN systems." Brief in Support of the Motion at 17.

The court finds that Hedtke's experience in marketing and selling computer network products and services would assist the jury in understanding what SAN systems

are and how they are installed and implemented. The court finds that, at this stage, it is premature to prohibit Hedtke from testifying because his testimony may be duplicative of earlier testimony. If during the course of trial BVS believes Hedtke's testimony would result in "undue delay, wasting time, or needlessly presenting cumulative evidence," it may object at the appropriate time. Fed. R. Evid. 403. Accordingly, the court shall deny the Motion with respect to Philip Hedtke's opinions.

## *VI. CONCLUSION*

In light of the foregoing, BVS, Inc.'s "Motion to Strike CDW Direct, LLC's Expert Witnesses" (docket no. 101) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 19th day of February, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA